UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGERS SHIPP,

                Plaintiff,                           Civil Action No. 15-13034
                                                    Honorable David M. Lawson
                                                    Magistrate Judge David R. Grand

v.

FINANCIAL FREEDOM, a division of
ONE WEST BANK, N.A.,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS THE COMPLAINT [7]

**I.**      **RECOMMENDATION**

Plaintiff Rogers Shipp ("Shipp") commenced this action against Financial Freedom seeking money damages for the wrongful foreclosure of his residence.  Before the Court is Financial Freedom's motion to dismiss the complaint. [7].  Shipp filed a response, to which Financial Freedom filed a reply. [8, 12].  The motion has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the following reasons, the Court RECOMMENDS that Financial Freedom's motion [7] be GRANTED.

**II.**      **REPORT**

      **A.**      **Background**

On February 16, 2005, Shipp and his wife executed an adjustable rate note in order to obtain a reverse mortgage[1] on their residence located at 3322 Northwestern Street in Detroit,

---

[1] As explained in *Bennett v. Donovan*, 703 F.3d 582, 584-85 (D.C. Cir. 2013):

      A "reverse mortgage" is a form of equity release in which a mortgage

Michigan (the "property"). [7, Ex. A].[2]  The note provides that:

---

> lender (typically, a bank) makes payments to a borrower based on the borrower's accumulated equity in his or her home. Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur (like the death of the borrower or the sale of the home).  Because repayment can usually be deferred until death, reverse mortgages function as a means for elderly homeowners to receive funds based on their home equity.
>
> Reverse mortgages are generally non-recourse loans, meaning that if a borrower fails to repay the loan when due, and if the sale of the home is insufficient to cover the balance, then the lender has no recourse to any of the borrower's other assets.  This feature is, of course, favorable to borrowers but introduces significant risk for lenders—if regular disbursements are chosen, they can continue until the death of the borrower (like a life annuity), and the loan balance will increase over time, making it less and less likely that the borrower will be able to cover the full amount.  If a borrower lives substantially longer than expected, lenders could face a major loss.
>
> Congress, concerned that this risk was deterring lenders from offering reverse mortgages, authorized HUD to administer a mortgage-insurance program, which would provide assurance to lenders that, if certain conditions were met, HUD would provide compensation for any outstanding balance not repaid by the borrower or covered by the sale of the home.  The Housing and Community Development Act of 1987 set out those conditions.

[2] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008).  Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010).  Moreover, if a document is not attached to a complaint or answer, but "is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36.  Similarly, where the plaintiff's pleadings do not refer directly to a given document, if that document governs the plaintiff's rights and is necessarily incorporated by reference, then the court may consider it without converting the motion into one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan

> Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary [of Housing and Urban Development], if;
>
> (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a[t] least one other Borrower . . .

[*Id.* at ¶ 7(B)(i)]. The accompanying mortgage contains an identically-worded provision at paragraph 9(b) and authorizes Financial Freedom to "invoke the power of sale and any other remedies permitted by applicable law" if it "requires immediate payment in full under Paragraph 9." [7, Ex. B at ¶ 20].

On April 15, 2015, Financial Freedom mailed Shipp an occupation certification letter. [7, Ex. C]. The certification letter contained the following notice:

> On two previous occasions, 2/15/2015 and 3/15/15, Financial Freedom requested that you certify that the property at 3322 Northwestern Street Detroit, Michigan 48206 remains your principal residence. It has been sixty (60) days since you were first requested to certify your occupancy. It is Financial Freedom's obligation as the loan servicer to inform you that we will initiate steps to verify your occupancy by different means, including attempting to reach you by telephone and ordering occupancy inspections, if, at the end of these efforts, we still have not verified that you maintain 3322 Northwestern Street, Detroit MI 48206 as your primary residence, your loan may be called due and payable, and if not repaid, could lead to foreclosure and your loss of the property.

[*Id.*]. Shipp returned the certification letter to Financial Freedom, indicating that he and his wife no longer resided at the property, and that their new address was 4427 Oregon Street in Detroit, Michigan. [*Id.*]. Financial Freedom then commenced foreclosure proceedings on the property.[3]

---

documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). In addition, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir.2010) (quoting *Commercial Money Ctr.,* 508 F.3d at 335–36). All of the documents referenced herein satisfy these standards.

[3] Financial Freedom represents that the sheriff's sale was scheduled for January 7, 2016. [7 at Pg

Shipp filed the instant lawsuit on August 26, 2015, alleging causes of action for promissory estoppel and "professional malpractice." [1].  Shipp maintains that the foreclosure proceedings are improper since he "relied upon Financial Freedom's promise that payments on the reverse mortgage would be deferred until he sold or moved out of the home," and that "Financial Freedom requested that Plaintiff execute a deed in lieu of foreclosure, notwithstanding that Plaintiff was still living in home and not sold it." [*Id.* at ¶ 14-15].

In its motion to dismiss the complaint, Financial Freedom contends that: (1) the promissory estoppel claim is precluded by the express provisions in both the note and the mortgage, barred by the Statute of Frauds, and does not state a plausible claim for relief; (2) the professional malpractice claim should be dismissed because it fails to meet the minimum pleading requirements set forth in Rule 8(a) and because financial institutions do not owe a professional duty to borrowers; and (3) insofar as Shipp alleges a cause of action for breach of contract on account of the foreclosure proceedings, this claim lacks merit because he initially breached the note and mortgage by failing to maintain his primary residence at the property.

**B.    Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability

---

ID 32, n.1].  It is unclear from the record whether the sale ever took place.

requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.      Analysis

#### 1.  *Promissory Estoppel*

Shipp's promissory estoppel fails for numerous reasons. First, the claim is precluded by the express terms of the note and the mortgage. Under Michigan law, "[p]romissory estoppel may not be used to override the express agreement of the parties contained in written agreements." *APJ Assocs., Inc. v. North Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003);

*see also Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 395 (E.D. Mich. 2000) ("If the performance satisfying the detrimental reliance requirement is the same performance which constitutes the consideration of a written commercial contract, the doctrine of promissory estoppel is not applicable."); *Bidgroup v. GKN Sinter Metals, Inc.*, No. 271288, 2007 Mich. App. LEXIS 112, at *6 (Mich. Ct. App. Jan. 23, 2007) ("where an express contract addresses the pertinent subject matter, the law will not recognize . . . recovery under a theory of promissory estoppel.").   Here, Shipp's contention that Financial Freedom promised to defer the reverse mortgage payments "until he sold or moved out of" the property is expressly contradicted by paragraph 7(B)(i) of the note and 9(b) of the mortgage.   These provisions entitle Financial Freedom to the "immediate payment in full of all outstanding principal and accrued interest" on the note in the event the "Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a[t] least one other Borrower . . ."   Therefore, since the "absence of an express contract" is a necessary prerequisite to "apply promissory estoppel under Michigan law," the presence of the note and the mortgage bar any claim for relief under this theory of liability. *APJ Assocs.*, 317 F.3d at 617.

Second, to the extent Shipp alleges that Financial Freedom orally informed him that it would modify the debt acceleration provisions in the note and the mortgage, this part of his promissory estoppel claim is subject to the Statute of Frauds because these representations were not made in a signed writing.  Mich. Comp. Laws § 566.132(2) states that:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

6

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.[4]

Pursuant to section 566.132(2), Michigan courts have held that "any agreement to modify a loan, waive a loan provision, or to provide any other financial accommodation must be in writing and signed by the financial institution." *Frank v. Mortgage Elec. Registration*, No. 14-13518, 2014 U.S. Dist. LEXIS 167934, at *9 (E.D. Mich. Dec. 4, 2014) (citing *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 549 (2000)). Because Shipp does not allege that Financial Freedom executed a signed written promise to modify the debt acceleration provisions in the note or the mortgage (or any of the other provisions in those documents for that matter), this portion of the promissory claim is barred by the Statute of Frauds.

Shipp also fails to identify, with sufficient particularity, any promise made by Financial Freedom that either contradicts or is distinguishable from those already contained in the note and mortgage. *See Etts v. Deutsche Bank Nat'l Trust Co.*, 126 F. Supp. 3d 889, 903 (E.D. Mich. 2015) (holding that plaintiffs did not specify the alleged promise forming the basis of their promissory estoppel claim "with particularity"); *see also Charter Twp. of Ypsilanti v. Gen. Motors Corp.*, 201 Mich. App. 128, 134 (1993) ("Promissory estoppel requires an actual, clear, and definite promise."). While Shipp maintains that Financial Freedom promised him that "payments on the reverse mortgage would be deferred until he sold or moved out of [his] home," [1 at ¶ 14], these allegations merely paraphrase the debt acceleration provisions in paragraph

---

[4] Financial Freedom is a "financial institution" for purposes of the Statute of Frauds because it operated as an affiliate of OneWest Bank, FSB, a federally chartered savings association. *See* Mich. Comp. Laws § 566.132(3); *see also Abdullah El-Seblani v. OneWest, FSB*, No. 11-11178, 2011 U.S. Dist. LEXIS 144329, at *12 (E.D. Mich. Dec. 15, 2011).

7(B)(i) of the note and 9(b) of the mortgage.   More importantly, the record shows that the property is currently not Shipp's or his wife's principal residence.   On the occupation certification letter which the Shipps returned to Financial Freedom, they left the occupation certification section blank and instead listed their "current alternative contact" address as 4427 Oregon Street in Detroit, Michigan. [7, Ex. C].   This address is also listed on the most recent version of Shipp's driver license [7, Ex. E at Pg ID 70], and it is the one that appears on the docket in this case after Shipp filed a notice of address change with the Court. [6].   Thus, Shipp's complaint fails to state a plausible claim for promissory estoppel.

### 2.   *Professional Malpractice*

Insofar as Shipp's allegations of professional malpractice can be construed as a separate cause of action, it should be dismissed under Fed. R. Civ. P. 8(a)(2) because it does not include a "short and plain statement" of the claim.   Since the complaint only contains a brief legal definition of the term "professional malpractice," without any factual explanation specifically addressing Financial Freedom's alleged malfeasance in the instant case, "no more than guessing could take place" as to the substance Shipp's claim and dismissal is appropriate  pursuant to Rule 8(a)(2).   *Agee v. Wells Fargo Bank*, No. 10-10197, 2010 U.S. Dist. LEXIS 48815, *5 (E.D. Mich. Apr. 15, 2010) ("As has been recognized by our circuit and others, despite liberal pleading requirements for *pro se* litigants, it is not the role of the court to guess the nature of the claim(s) asserted.").

Moreover, even assuming Shipp's allegations otherwise satisfied the basic pleading requirements of Rule 8(a)(2), Shipp has no viable professional malpractice claim against Financial Freedom.   Under Michigan law "[a] malpractice claim requires proof of simple negligence based on a breach of a professional standard of care," *Phillips v. Mazda Motor Mfg.,*

*Inc.*, 204 Mich. App. 401, 409 (1994), which "arises out of the exercise of professional judgment or a professional relationship." *Khadher v. PNC Nat'l Ass'n*, No. 12-14765, 2013 U.S. Dist. LEXIS 168667, at *15 (E.D. Mich. Nov. 27, 2013) (citing *Stover v. Garfield*, 247 Mich. App. 456, 463-64 (2001)).

Here, Shipp does not allege a "professional relationship" between the parties, but rather alleges only a mortgagee/mortgagor business relationship between the Shipps and Financial Freedom related to the note and the mortgage at issue. This gets Shipp nowhere on his instant claim, however, as "Michigan law is uniformly clear on the point that lenders owe no duty outside of their contractual obligations to borrowers under state law." *Id.* at *16 (citing *Nat'l City Bank v. Syatt Realty Group, Inc.*, No. 07-12438, 2011 U.S. Dist. LEXIS 198, at *18 (E.D. Mich. Jan. 3, 2011); *see also Farver v. Citizens Bank*, No. 227517, 2002 Mich. App. LEXIS 776, at *15 (Mich. Ct. App. May 21, 2002) (dismissing plaintiff's claim that "bank owed him a duty 'to follow reasonably recognized banking practices'" because he did not "allege a breach of independent duty giving rise to a tort action."). As a result, the cause of action for professional malpractice should be dismissed.

### 3.      Breach of Contract

While the complaint makes no explicit mention of a cause of action for breach of contract, Financial Freedom contends that such a claim would, in any event, be unavailing. To establish a breach of contract under Michigan law, a plaintiff must sufficiently allege: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014).

The main thrust of Shipp's complaint is that Financial Freedom violated the note and the mortgage by commencing foreclosure proceedings while he still resided at the property. As

discussed above, however, in his response to Financial Freedom's Occupancy Certification Request, Shipp and his wife expressly advised that they no longer maintained their "principal residence" at the property, and that their "current alternative" address was at 4427 Oregon. [7-4]. In none of his submissions to the Court does Shipp challenge this evidence. Indeed, Shipp has advised the Court that he continues to reside at the 4427 Oregon address. [6]. Financial Freedom therefore acted within its rights to accelerate the debt payments under paragraph 7(B)(i) of the note and 9(b) of the mortgage and invoke the power of sale provision under paragraph 20 of the mortgage. *See* Mich. Comp. Laws § 600.3204(1)(a) (providing that "[a] default in a condition of the mortgage . . . by which the power to sell became operative" as one the prerequisites for instituting a foreclosure by advertisement). Consequently, Shipp may not recover damages for breach of contract.[5]

> 4.    *Sur-reply*

Shipp also filed a sur-reply on December 28, 2015. [13]. This Court's local practice rules do not provide for the filing of such briefs, *see* E.D. Mich. L.R. 7.1(e), and Shipp did not request permission to file it. However, as Shipp is representing himself *pro se*, and considering the document's brevity (about five pages of text), the Court will consider his sur-reply.

Although he primarily reiterates the same arguments from his prior filings, in his sur-reply Shipp also argues that the note and the mortgage are invalid on the ground that "there was never a meeting of the minds" between the parties regarding the essential terms of those agreements. [13 at Pg ID 118]. "A meeting of the minds exists whenever the parties objectively manifest their agreement to the essential terms of a contract." *FDIC v. McCann*, No. 10-14962,

---

[5] Shipp argues, for the first time in his response, that Financial Freedom violated Mich. Comp. Laws § 207.504, which governs how real estate transfer tax rates are calculated. [8 at Pg ID 97]. The statute, however, has no application to the facts of this case or any of the asserted claims.

2013 U.S. Dist. LEXIS 133085, at *7 (E.D. Mich. Sep. 18, 2013) (citing *Calhoun Cnty. v. Blue Cross Blue Shield Mich.*, 297 Mich. App. 1, 13 (2012)).  Shipp does not dispute that he signed both the note and the mortgage, "thereby manifesting [his] assent to be bound by the terms therein," *McCann*, 2013 U.S. Dist. LEXIS 133085, at *7, and he has not alleged any ambiguity or matter about which the parties did not agree.  Accordingly, this argument cannot overcome Financial Freedom's instant motion.

III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Financial Freedom's motion to dismiss plaintiff's complaint **[7]** be **GRANTED**.


Dated: April 29, 2016                                    s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                              United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A

party may respond to another party's objections within 14 days after being served with a copy.

*See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and

should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts

EDDREY O. BUTTS
Case Manager

Dated:  April 29, 2016